UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LUIS GUSTAVO DELGADO,

                Petitioner,

    v.

PAMELA BONDI, *et al.*,

                Respondents.

CASE NO. 2:26-cv-00649-GJL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

Petitioner Luis Gustavo Delgado, a native and citizen of Cuba, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 6. On February 23, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his immigration detention has become indefinite in violation of the Immigration and Nationality Act ("INA"), and requesting immediate release from detention and injunctive relief imposing limitations on the Government's ability to remove him to a country other than Cuba (i.e. "third-county removal"). *Id.*

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition and **GRANTS IN PART** and **DENIES IN PART** Petitioner's request for a permanent injunction.

## I.    BACKGROUND

Petitioner, a native and citizen of Cuba, arrived in the United States in April 1997, and had his status adjusted to that of a lawful permanent resident on November 28, 2000, under Section 245 of the INA, 8 U.S.C. § 1255. *See* Dkt. 10-1 at 2, Ex. A (B. Andrade Dec.).

In September 2017, Petitioner was convicted in the United States District Court for the Southern District of Florida of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A)(viii). Dkt. 10-2, Ex. B; Dkt. 11 ¶ 6. Petitioner was sentenced to a term of imprisonment of sixty (60) months and a five (5) year term of supervised release. Dkt. 10-2 at 2–4; Dkt. 11 ¶ 6.

Upon his release from prison, Petitioner was transferred to ICE custody on March 28, 2022. Dkt. 11 ¶ 8. On that same day, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") charging Petitioner with removability under Section 1227(a)(2)(A)(iii) as a noncitizen who has been convicted of an aggravated felony relating to the illicit trafficking of a controlled substance as well as a noncitizen convicted of a conspiracy to commit an aggravated felony. Dkt. 10-1, Ex. A; Dkt. 11 ¶ 9. Petitioner was also charged with removability under Section 1227(a)(2)(B)(i) as a noncitizen who has been convicted of an offense relating to a controlled substance. Dkt. 11 ¶ 9.

Following a custody redetermination request filed with the Executive Office for Immigration Review ("EOIR"), on April 7, 2022, an Immigration Judge ("IJ") ordered

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 2

Petitioner's removal to Cuba. Dkt. 10-4, Ex. D; Dkt. 11 ¶ 12. Petitioner did not file an appeal of this decision with the Board of Immigration Appeals ("BIA"). Dkt. 11 ¶ 12.

On May 13, 2022, the Office of Enforcement and Removal Operations ("ERO") was informed that there was not a significant likelihood of Petitioner's removal in the foreseeable future to Cuba. Dkt. 11 ¶ 13. As a result, on July 7, 2022, ICE released Petitioner from custody under an Order of Supervision ("OSUP"). *Id.* ¶ 14.

On May 27, 2025 and without notice, Petitioner was re-detained by ICE's ERO office when he reported for a scheduled ICE check-in. Dkt. 10-6, Ex. F; Dkt. 11 ¶ 15. ERO revoked Petitioner's OSUP, and he was transferred to the NWIPC on June 1, 2025, where he has continuously remained. Dkt. 11 ¶¶ 15–16.

On July 1, 2025, Petitioner was referred to United States Citizenship and Immigration Services ("USCIS") for a reasonable fear interview, which was held on July 28, 2025. Dkt. 11 ¶¶ 17, 21. Prior to conducting the interview, on July 10, 2025, ERO was informed that Cuba would not accept Petitioner for removal to Cuba. *Id.* ¶ 18. The next day, on July 11, 2025, ICE served Petitioner with a Notice of Removal, informing him of its intent to remove him to Mexico. Dkt. 11 ¶ 19. Petitioner refused to sign the Notice. *Id.*

After USCIS conducted the reasonable fear interview on July 28, 2025, it informed ERO on August 12, 2025, that Petitioner had failed to establish a reasonable fear of persecution or torture in Mexico. Dkt. 11 ¶ 22. Petitioner was served with a Notice of the negative fear determination on August 13, 2025, which he refused to sign. *Id.* ¶ 23. Petitioner did not request an IJ's review of this determination. *Id.*

On November 15, 2025, ICE transferred Petitioner to El Paso, Texas, to effectuate his removal to Mexico, but on November 19, 2025, Petitioner refused to voluntarily depart to

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 3

Mexico. *Id*. ¶¶ 24–25. On January 27, 2026, Petitioner informed ERO that he will not go to Mexico. *Id*. ¶ 26. On February 12, 2026, ICE returned Petitioner to the NWIPC. *Id*. ¶ 27.

On February 23, 2026, Petitioner filed his proposed habeas Petition along with Motions for leave to proceed *In Forma Pauperis* ("IFP") and to appoint the Federal Public Defender as counsel. Dkts. 1, 1-1, 2. The Court granted IFP, appointed counsel, and set a briefing schedule on February 24, 2026. Dkts. 5, 7.

In the Petition, Petitioner argues that his detention has become indefinite because there is no significant likelihood of his removal to Cuba or Mexico in the reasonably foreseeable future. Dkt. 6 at 24. He also claims that Respondents have engaged in a scheme of punitive removal to third countries "without providing fair notice and an opportunity to contest the removal in immigration court." *Id.* at 20. Petitioner asks that the Court release him from custody and prevent Respondents from re-detaining him unless they obtain a valid travel document to Cuba, provide a hearing to assess whether he is a flight risk or danger to the community, and provide an opportunity to contest the removal. *Id.* at 30–31. Respondents filed a Return brief on March 10, 2026. Dkt. 9. Petitioner filed his Traverse on March 13, 2026. Dkt. 12.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 4

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens[1] subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Additionally, the federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate:

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To demonstrate that ongoing relief is needed, the party seeking a permanent injunction must establish "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the

---

[1] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (alteration in original) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

### III.   DISCUSSION

**A.   Petitioner's Detention has Become Indefinite**

Petitioner is a noncitizen who has been present in the United States for 29 years. Dkt. 6 at 6. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. Having been detained already for over ten (10) months since an IJ ordered his removal, Petitioner's continued detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.[2]

Further, the Court finds here that Petitioner's evidence and uncontroverted assertions "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. That evidence includes: (1) the government's failure to deport Petitioner since his 2022 order of removal, Dkt. 11 ¶¶ 11–14; (2) the unlikelihood of the Cuban government to accept removal of Cubans convicted of criminal offenses, Dkt. 6 at 6–7; *see also Rodriguez-Fernandez v. Bondi*, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026); and (3) the government detained Petitioner without securing a travel document and failed to remove him between May 2025 and March 2026, *see* Dkt. 6 at 6–7. Additionally, the Court takes judicial notice of the existence of a

---

[2] Petitioner proposes that the six-month "presumptively reasonable" grace period "runs unabated once Petitioner's removal order was final, and does not run solely during any period when Petitioner was detained." Dkt. 6 at 9–10. The Court need not resolve that issue here, because, even under a standard that only runs while Petitioner is detained, the presumptively reasonable period has expired.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 6

backlog of over 34,000 Cubans with final removal orders largely untouched by a few hundred removals each year. *See Rodriguez-Fernandez*, 2026 WL 445562, at *3 (citing No. 2:26-cv-00170-TMC, Dkt. 5 at 7 n.1).

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Id*. In response, the government does not argue that Petitioner's removal to Cuba is likely. *See generally* Dkt. 9. Instead, they refer to Petitioner's "ongoing refusal to cooperate with ICE's removal efforts," (Dkt. 9 at 7), and submit that "[a]lthough Mexico has a general policy against accepting noncitizens convicted of aggravated felonies, ICE has successfully removed similarly situated Cuban nationals to Mexico." *Id.* Respondents do not, however, explain what steps, beyond a reasonable fear interview conducted by U.S. authorities, they have taken with the Mexican government to arrange for Petitioner's arrival.

Respondents also claim that Petitioner's own evidence "reflects the Mexican government generally accepts individuals *who consent to removal there*." *Id*. (emphasis added) (citing Dkt. 6-2, Ex. 2). However, Respondents' use of Petitioner's evidence—an ICE officer's declaration in another habeas case (Dkt. 6-2, Ex. 2, *Rios v. Noem*, No. 25-cv-02866-JES-VET, Dkt. 13 (S.D. Cal. Nov. 5, 2025))—does not support their position. While noting that Petitioner has "refus[ed] to voluntarily depart the United States when . . . given the opportunity to do so," (Dkt. 9 at 7), Respondents have ignored Petitioner's contention here, again supported by the declaration (Dkt. 6-2, Ex. 2), that the Mexican government only accepts individuals who *consent* to removal there. Dkt. 6 at 6–7 (citing Dkt. 6-2 ¶¶ 11–12) ("ICE drove Petitioner to the Mexican border to effectuate his third country resettlement, but Petitioner refused to willingly go to Mexico. Petitioner did not express a fear of removal to Mexico. The Mexican government was ready to accept Petitioner only if he would willingly go to Mexico. . . . As removal to Mexico was

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 7

unsuccessful, ICE no longer intends to seek to remove Petitioner to Mexico."). Given that Petitioner "refuses Mexico as a third country for removal," Dkt. 6 at 7, Respondents' representations are not persuasive enough to rebut Petitioner's showing that his detention has become indefinite.

Because there is not a likelihood that either Cuba or Mexico will accept Petitioner in the reasonably foreseeable future, his detention is no longer permitted by the INA as construed in *Zadvydas. See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful and he must be released. *See Rodriguez-Fernandez*, 2026 WL 445562, at *4 (allowing release upon a finding that removal was not reasonably foreseeable); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025). The Court therefore **GRANTS** the Petition for writ of habeas corpus. Dkt. 6.

**B.    Respondents May Not Remove or Seek to Remove Petitioner to a Third Country Without Affording Him Meaningful Notice and an Opportunity to Respond**

In addition to immediate release on his habeas Petition, Petitioner asks the Court to restrict Respondents' ability to remove him to an unknown third country. Dkt. 6 at 16–19, 30–31. He argues that such an order is necessary because "Respondents have developed and implemented a policy and practice of removing individuals to third countries, without first following the procedures in the INA for designation and removal to a third country and without providing fair notice and an opportunity to contest the removal in immigration court." *Id*. at 20.

As discussed above, Respondents have notified Petitioner at least twice that they are seeking his removal to Mexico. Dkt. 11 ¶¶ 19, 23; *see* Dkt. 10-9 at 2. Petitioner presents evidence that, in cases where the government fails to remove a noncitizen to Mexico because they refuse, ICE "continu[es] to seek to identify a third country for repatriation." Dkt. 6-2 ¶ 12.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 8

The Court therefore finds that Petitioner faces a likelihood of third-country removal under the challenged policies.

The INA dictates the countries to which a noncitizen may be removed after a final order of removal is issued. *Jama v. ICE*, 543 U.S. 335, 338–41 (2005); *Dzyuba v. Mukasey*, 540 F.3d 955, 956 (9th Cir. 2008) (per curiam). In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection. 8 U.S.C. § 1231(b)(2). If the above options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama*, 543 U.S. at 341.

The government is prohibited from removing a person to a third country where they may be persecuted or tortured. Section 1231(b)(3)(A) provides for withholding of removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113, prohibits removal of a noncitizen to a country where he is likely to be tortured. *See* 8 CFR §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). "Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, a noncitizen's removal order remains valid and enforceable, albeit not to the identified country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson*, 594 U.S. at 536; *Lanza v. Ashcroft*, 389

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 9

F.3d 917, 933 (9th Cir. 2004) (explaining that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

    1.      Petitioner's claims are not barred by D.V.D.

Respondents argue that Petitioner's third-country removal claims are barred by the *D.V.D.* class action. Dkt. 9 at 9; *see Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). There, the district court certified a class consisting of:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

778 F. Supp. 3d at 378, 394. The court also granted the class' motion for a preliminary injunction establishing procedures that DHS and ICE were required to follow before removing a noncitizen to a third country. *Id.* at 394; *see D.V.D. v. U.S. Dep't of Homeland Sec.*, CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (memorandum offering more guidance on compliance with the preliminary injunction). On June 23, 2025, the Supreme Court stayed the District of Massachusetts' preliminary injunction pending appeal in the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

Here, Respondents claim that, due to the relief he seeks, "Petitioner is a member of the Plaintiff class certified in *D.V.D.* and is bound by the proceedings in that case." Dkt. 9 at 9. However, as this Court has discussed previously, it is not clear whether the Supreme Court in *D.V.D.* "found the government likely to succeed on its jurisdictional or substantive claims." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 732 (W.D. Wash. 2025). "This distinction is especially important in this case, where one of the government's primary arguments—that the *D.V.D.* court

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 10

had no power to enter *classwide* injunctive relief—would have no bearing on the merits of individual habeas petitions." *Id*.

Ninth Circuit precedent mandates notice and a hearing prior to removal to a third country. *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025). Absent clear guidance from the Supreme Court that those cases are no longer good law, this Court must follow controlling precedent. *See Nguyen*, 796 F. Supp. 3d at 732, *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *5 (W.D. Wash. Dec. 19, 2025).

Thus, the emergency docket order in *D.V.D.* does not preclude relief here. *Rodriguez-Fernandez*, 2026 WL 445562, at *5; *Francisco Lorenzo v. Bondi*, No. 2:25-CV-02660-LK, 2026 WL 237501, at *8 (W.D. Wash. Jan. 29, 2026).

    2.    <u>DHS' procedures do not afford due process to Petitioner</u>.

On July 9, 2025, ICE issued a memorandum updating agency officials on its policy regarding third country removals after the Supreme Court's order in *D.V.D. v. Department of Homeland Sec*. Dkt. 1-4 at 2. The policy states as follows:

> Effective immediately, when seeking to remove an alien with a final order of removal—other than an expedited removal order under Section 235(b) of the [INA]—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, *Guidance Regarding Third Country Removals*, as detailed below. A "third country" or "alternative country" refers to a country other than that specifically referenced in the order of removal.

*Id.* The policy continues:

> If the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 11

received and determined to be credible. HSI and ERO will be made aware of any such assurances.

*Id.*

Respondents contend that the above policy, and their notices to Petitioner of their intention to remove him to Mexico, satisfy his request to be provided with notice of third-country removal. Dkt. 9 at 10–11. But Petitioner seeks "notice and meaningful opportunity to respond *in compliance with the statute and due process* in reopened removal proceedings." Dkt. 6 at 31 (emphasis added). And "both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019) (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held. *Id.* at 1011; *see Nguyen*, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy.").

In light of the foregoing, Petitioner has met the requirements for injunctive relief. *See eBay*, 547 U.S. at 391. Respondents' notice that they intend to deport Petitioner to Mexico under the policy described above demonstrates a "cognizable danger" of removal to a third country with insufficient due process. *Cummings*, 316 F.3d at 897. Remedies such as monetary damages are clearly "inadequate to compensate for that injury." *eBay*, 547 U.S. at 391. And "because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the 'public interest would not be disserved by a permanent injunction.'" *Francisco Lorenzo*, 2026 WL 237501, at *10 (quoting *eBay*, 547 U.S. at 391).

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 12

The Court therefore **GRANTS** Petitioner's request for injunctive relief preventing his removal to a third country without notice and meaningful opportunity to respond in compliance with the INA and due process in reopened removal proceedings.[3]

    3.    <u>The Court otherwise denies Petitioner's request for injunctive relief</u>.

Petitioner also requests an order that the government may not re-detain him unless it (1) obtains a valid travel document to a Cuba for him; (2) provides the travel document to him and his counsel; and (3) offers him the opportunity to leave on his own within two months. Dkt. 6 at 31. But the record does not contain sufficient argument or authority to establish that the Due Process clause will be violated in the absence of these specific procedures, particularly when any effort to re-detain Petitioner would be governed by the regulations set forth in 8 C.F.R. § 241.13. *See id.* at 14–15 (acknowledging that § 241.13 governs revocation of release for noncitizens subject to a final order of removal). The Court therefore **DENIES** these requests for injunctive relief. The Court also notes that, once he is released from custody based on this Order, Petitioner may undertake his own effort to obtain travel documents and leave the United States for a country of his choice that will accept him.

**C.    Petitioner Has Not Shown that He is at Risk of Punitive Removal**

Petitioner also requests an order prohibiting Respondents from removing him "to any third country where he is likely to face imprisonment or other punishment upon arrival." *Id.* at 31. Here, the record does not contain sufficient evidence either that (1) removal to *any* third country would be punitive; or (2) that he faces a likelihood of removal to a country where he will be imprisoned upon arrival. *See Nguyen*, 796 F. Supp. 3d at 732–34, 736–39 (granting

---

[3] Because the Court finds that Respondents violated Petitioner's procedural due process rights, it need not consider his claim that Respondents' actions violated the Administrative Procedure Act. Dkt. 6 at 27–28.

preliminary injunction prohibiting removal "to any country where [Petitioner] is likely to face imprisonment upon arrival" based on evidence demonstrating that petitioner was similarly situated to detainees who had faced imprisonment upon removal). As the Court stated recently in a case with a similar request:

> While there is extensive evidence across multiple cases that the government is carrying out *some* third-country removals that are unconstitutionally punitive, the law surrounding permanent injunctive relief does not allow the Court to infer from those cases that *everyone* who faces third-country removal is likely to be subject to similar irreparable harm. Such facts do not exist here.

*Rodriguez-Fernandez*, 2026 WL 445562, at *7. As in *Rodriguez-Fernandez*, such facts do not exist here either. Thus, the Court cannot conclude that Petitioner faces a "cognizable danger" as opposed to a "mere possibility" of punitive removal at this time. *Cummings*, 316 F.3d at 897. This request for injunctive relief is therefore **DENIED without prejudice**.

### IV.     CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1)     Petitioner Luis Gustavo Delgado's Petition for writ of habeas corpus is **GRANTED** and Petitioner's request for a permanent injunction is **GRANTED IN PART** and **DENIED IN PART**. Dkt. 6.

(2)     Respondents are **ORDERED** to release Petitioner Luis Gustavo Delgado from custody on reasonable conditions of supervision[4] within **ONE** day of this Order;

(3)     Counsel for Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release;

(4)     Respondents, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them, are **PROHIBITED** from removing Petitioner to a third country without affording him notice

---

[4] The reasonable terms of supervision are set forth in 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3))."

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 14

and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

Dated this 3rd day of April, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 15